## THE TROY SOCONY.

### THE EMMA KATE ROSS.

District Court, E. D. New York. August 17, 1926.

Collision ⊕95(4)—Facts held to show motor vessel responsible for collision with dumpers, in sheering to port when passing between dumpers and coal tow.

Facts *held* to show that motor vessel traveling rapidly was responsible for collision with dumpers being towed by steam tug, in sheering sharply to port when passing between dumpers and coal tow, where there was sufficient clear water between tow of steam tug, and coal tow for motor vessel to have passed safely.

Libels by P. Sanford Ross, Inc., against the motor vessel Troy Socony, her engines, etc., and by the Standard Transportation Company against the steam tug Emma Kate Ross, her engines, boilers, etc. Decree for libelant, P. Sanford Ross, Inc., against the Troy Socony in the first action, and for P. Sanford Ross, Inc., claimant of the Emma Kate Ross, against the libelant Standard Transportation Company, dismissing libel in second action.

See, also, 18 F.(2d) 629; 21 F.(2d) 325.

Alexander & Ash, of New York City, for P. Sanford Ross, Inc., and for steam tug Emma Kate Ross.

Macklin, Brown & Van Wyck, of New York City, for Standard Transportation Co. and for motor vessel Troy Socony.

CAMPBELL, District Judge. The two above-entitled actions were tried together, and, as the facts are the same in both actions, one opinion will suffice.

On the night of December 11, 1924, two of libelant's dumpers, Nos. S–39 and S–34, about 110 to 115 feet long, 33 feet beam, with 14 feet sides, loaded with rock and mud, were taken in tow by the steam tug Emma Kate Ross at Elizabethport, N. J., bound for the dumping grounds. The tow was made up in the usual manner as a tandem tow,

dumper No. S-39 being the hawser boat and No. S-34 being made fast immediately astern of No. S-39, there being but 2 or 3 feet between the two dumpers. The length of the hawser from the fantail of the Ross to No. S-39 is disputed, but I find it was about 300 feet.

The master in charge of the Ross was an experienced man, who had been towing dumpers for years. The Ross and the dumpers displayed the proper lights required by the regulations. The tide was ebb and the tow was making 3 to 3½ miles. When passing Shooters Island the Ross saw a Philadelphia & Reading coal tow ahead and to the east of Bergen Light, consisting of 20 to 25 coal boats, in charge of a tug, with a helper tug.

The Ross was on the Staten Island side of the channel overtaking the coal tow. The tug in charge of the tow blew one whistle, which the Ross answered with one, and changed her course a little to starboard. The coal tow then started to round to, and the Ross was as close to Staten Island as she could safely go. The position of the Ross was disputed by the witnesses on behalf of the Troy Socony, but I accept the testimony of the master and deckhand of the Ross as true.

The Troy Socony, a motor vessel 245 feet long and 40 feet beam, light, was on that night bound from Poughkeepsie to Bay Way, just below Elizabethport. She had come down on her starboard side of the Kills, the New Jersey side, and saw the coal tow. She slowed down to see what the coal tow would do. When she saw that the coal tow intended to round to at Taintor's Dock, she started to leave the New Jersey shore. The coal tow was taking up more than one-half of the Kills.

On sharply conflicting testimony I find as follows:

When the Ross was up to the tier of the coal tow nearest to her, she saw the Troy Socony. This was two or three minutes after the Ross had given the signal to the coal tow. The Troy Socony was then showing her headlight and green light.

When the Ross was up to the second or third tier of the coal tow, the Troy Socony gave a one-whistle signal which the Ross answered with a one-whistle signal. The Ross was then close to the Staten Island side, with her tow straight behind, and could not put her helm hard-aport as reported, but ported her helm a little, and could not do more. She then saw both the red and green lights of the Troy Socony.

The Troy Socony passed close to the Ross, and when she had partly passed the Ross she went to port and came into contact with the bow of the No. S-39, a little to port of the center, causing her to turn to port and to sink about 100 feet off Staten Island, and the No. S-34 to break away, and both boats to suffer the damages of which complaint is made.

The Troy Socony attempts to account for her coming into contact with the No. S-39 by charging the Ross with going to port as the Troy Socony passed her, causing her cable to strike the Troy Socony's port stern, rendering her unmanageable, and that the hawser of the Ross went under the Troy Socony. But this I reject, both because it seems to be impossible to have happened, judged from the other circumstances, is denied by the master of the Ross, and was not referred to in the report of the master of the Troy Socony to the local inspectors.

The master of the Ross and her deckhand seek to account for what happened by claiming that the Troy Socony struck the towing hawser of the Ross and slid down on the No. S-39. While the Troy Socony may have struck the hawser of the Ross, of which the master made no mention in his report to the local inspectors, it does not seem to me, in view of the testimony of Capt. Stouten, of the W. G. Towns, the starboard tail end boat of the coal tow, that the Troy Socony slid down the cable of the Ross, but that she went over and down by the Towns so close that she threw herself over sharply to port, and in so doing came into contact with the bow of the No. S-39.

The master of the Troy Socony knew that the Ross had boats in tow, and was not surprised when he found that they were mud dumpers. I am convinced that there was sufficient clear water between the tow of the Ross and the coal tow for the Troy Socony to have passed safely; but, when her master allowed her to get as close as she came to the Towns, he caused the Troy Socony to sheer sharply to port and to come into contact with the No. S-39.

The boats came into contact at about 9:35 to 9:40 o'clock p. m., and the Troy Socony was due at Bay Way between 10 and 10:30 o'clock, and was making some speed. Both the Ross and the Troy Socony maintained lookouts, the deckhands so acting on each vessel.

The Troy Socony was solely to blame.

A decree may be entered in the first above-entitled action in favor of the libelant, **P. Sanford Ross, Inc.,** against the Troy So-

cony, with costs and the usual order of reference, and in the second above-entitled action in favor of the respondent, P. Sanford Ross, Inc., claimant of the Emma Kate Ross, against the libelant Standard Transportation Company, dismissing the libel, with costs.